(C. D. 1117)

SOUTHWESTERN SUGAR & MOLASSES CO., INC. v. UNITED STATES

United States Customs Court, Third Division

(Decided June 18, 1948)

*Hawley & Letzerich* (*Harry Hawley* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Richard H. Welsh,* special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

EKWALL, Judge: This case covers five protests which have been consolidated for trial. Plaintiff protests the refusal of the collector of customs to accept, as at first tendered, five consumption entries covering importations of molasses. From the testimony of the customhouse broker, who represented the plaintiff, it appears that at the time the entries were originally presented there appeared in the

lower right corner the words "Not imported to be commercially used for the extraction of sugar for human consumption," which had been imprinted by means of a rubber stamp. The customs officials rejected the entries for the reason that no affidavit accompanied them, as required by section 13.4 (a) of the Customs Regulations of 1943. The entries were returned to the customhouse broker, who thereupon produced affidavits properly executed on separate pieces of paper, which he tendered with the same entries. The entries together with the affidavits were then accepted.

Because of the provision in section 13.4 (d) of said customs regulations that three years may elapse before liquidation, the entries have not as yet been liquidated.

It is claimed in the protests filed that the collector's refusal to accept the entries as originally prepared, was illegal, in view of the fact that said entries constituted a sufficient compliance with the statute and the regulations thereunder, and that separate affidavits were not required.

The provisions of the statute and the regulations involved are as follows:

Tariff Act of 1930.

PAR. 502. * * * Molasses not imported to be commercially used for the extraction of sugar or for human consumption, three one-hundredths of 1 cent per pound of total sugars.

Customs Regulations of 1943.

SEC. 13.4 Molasses not for extraction of sugar nor for human consumption.— Pursuant to paragraph 502, Tariff Act of 1930, molasses not imported to be commercially used for the extraction of sugar or for human consumption may be released upon the deposit of estimated duties at the rate specified therefor, upon compliance with the following conditions:

(a) There shall be filed in connection with the entry an affidavit of the importer that the molasses is not to be used commercially for the extraction of sugar or for human consumption.

(b) If the molasses is entered for consumption, there shall also be filed in connection with the entry a bond on customs Form 7551 or 7553, with an added condition for the payment of the increased duty in the event the molasses is used contrary to the statements made in the above-mentioned affidavit. Liquidation of the entry shall be suspended pending proof of use or other disposition of the merchandise.

(c) If the molasses is entered for warehouse, the regular warehouse entry bond, customs Form 7555, shall be given and withdrawals shall be made on customs Form 7505. Estimated duty shall be deposited at the time of withdrawal and the liquidation of the warehouse entry shall be suspended pending proof of use or other disposition of the merchandise.

(d) Within 3 years from the date of entry (in the case of warehouse entries as well as consumption entries) the importer shall submit an affidavit of the superintendent or manager of the manufacturing plant stating the use to which the molasses has been put. If the collector is satisfied that the molasses has not been used in a manufacturing plant but was sold as molasses to the ultimate user, he

may accept as proof of the nature of such use an affidavit of the wholesaler or other person making the final sale of the product. Such affidavit shall state the quantity sold and the purpose for which the seller understood the purchase to be made. All affidavits as to use provided for in this paragraph shall state affirmatively the particular use, or alternative uses, each of which is a use other than for human consumption or for the extraction of sugar. If the molasses has not been used in the United States, evidence of exportation or destruction satisfactory to the collector shall be furnished. Affidavits as to use and affidavits or other documents showing exportation or destruction shall be filed in duplicate and one copy shall be forwarded to the comptroller of customs.

(e) Upon satisfactory proof of use of the molasses for purposes other than for the extraction of sugar or for human consumption or of the exportation or destruction thereof, the entry may be liquidated at the rate of three one-hundredths of 1 cent per pound of total sugars. When such proof of use or other disposition of the molasses is not made within 3 years from the date of the entry, or the use shown does not warrant the classification claimed, the entry shall be liquidated at the higher rate applicable under the first clause of paragraph 502, Tariff Act of 1930.

(f) Entries covering blackstrap molasses, as hereinafter defined, may be accepted and liquidated with duty at the rate of three one-hundredths of 1 cent per pound of total sugars after the filing of the affidavit prescribed in paragraph (a) of this section without compliance with the special requirements of paragraph (b), (c), (d), or (e). For the purposes of the regulations in this part, blackstrap molasses is defined as "final" molasses practically free from sugar crystals, containing not over 58 percent total sugars and having a ratio of

$$\frac{\text{total sugars x 100}}{\text{Brix}}$$

not in excess of 71. In the event of doubt, an ash determination may be made. An ash content of not less than 7 percent indicates a blackstrap molasses within the meaning of the regulations in this part.

## Tariff Act of 1930.

### Sec. 514. PROTEST AGAINST COLLECTOR'S DECISIONS.

Except as provided in subdivision (b) of section 516 of this Act (relating to protests by American manufacturers, producers, and wholesalers), all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury), and his decisions excluding any merchandise from entry or delivery, under any provision of the customs laws, and his liquidation or reliquidation of any entry, or refusal to pay any claim for drawback, or his refusal to reliquidate any entry for a clerical error discovered within one year after the date of entry, or within sixty days after liquidation or reliquidation when such liquidation or reliquidation is made more than ten months after the date of entry, shall, upon the expiration of sixty days after the date of such liquidation, reliquidation, decision, or refusal, be final and conclusive upon all persons (including the United States and any officer thereof), unless the importer, consignee, or agent of the person paying such charge or exaction, or filing such claim for drawback, or seeking such entry or delivery, shall, within sixty days after, but not before such liquidation, reliquidation, decision, or refusal, as the case may be, as well in cases of merchandise entered in bond as for consumption, file a protest in writing with the collector

setting forth distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto. The reliquidation of an entry shall not open such entry so that a protest may be filed against the decision of the collector upon any question not involved in such reliquidation.

The sole evidence produced was the testimony of the customs broker who made the entries. His testimony consisted of a recital of the facts of the presentation of the entries at the customhouse without affidavits but with the rubber stamp on the face thereof, their rejection by the customs authorities, and his production of separate affidavits in proper form, which he attached to said entries, whereupon the entries were filed and accepted. It appears from his testimony that entries had formerly been accepted on which the rubber stamp was used, but that the customs authorities later notified the customs broker that such stamp was no longer acceptable and that an affidavit in proper form on a separate sheet of paper was required. In view of this notification, the customs broker had prepared separate affidavits in the entries now before us and took them with him to the customhouse, but did not present them until the original entries were rejected.

At the trial Government counsel moved to dismiss the protests on the ground that the question presented therein is moot. Under the authorities the motion should be and is hereby granted.

In the case of *C. J. Tower & Sons et al.* v. *United States*, 20 C. C. P. A. (Customs) 364, T. D. 46131, a motion to dismiss was made on the ground that the questions presented were moot. In granting the motion the court said:

In support of the motion by the United States, the Assistant Attorney General argues here that the decision of the United States Customs Court was in favor of appellant's contention that its entered value was correct, and that such questions as appellant now seeks to have this court consider are not actual but moot, and that this court is not required to assume jurisdiction and is powerless to do so.

The importer, appellant, seeks to have this court pass upon the alleged moot questions, not for any relief it may bring importer in this case, but for the beneficial effects such consideration might have on pending and future reappraisement cases. Appellant in its memorandum in opposition to the motion to dismiss states:

It is true that the importer in this case has received a favorable judgment, but it is believed that this court should take jurisdiction of the appeal for the purpose, if possible, of quieting a litigation which has now been pending in the Customs Court since 1922.

We agree with the position taken by the Government that the questions involved in the assignments of error before us are moot and that the appeal should be dismissed for that reason, if for no other.

In *Mills* v. *Green*, 159 U. S. 651, 653, involving the same principle as is herein involved, the Supreme Court of the United States said:

The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give

opinions upon moot questions or abstract propositions, or to declare principles or rules of law which can not affect the matter in issue in the case before it. It necessarily follows that when pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal. And such a fact, when not appearing on the record, may be proved by extrinsic evidence.

In quite similar language and to the same effect is the case of *California* v. *San Pablo & Tulare Railroad Co.*, 149 U. S. 308, 314, where the following is found:

The duty of this court, as of every judicial tribunal, is limited to determining rights of persons or of property which are actually controverted in the particular case before it. When, in determining such rights, it becomes necessary to give an opinion upon a question of law, that opinion may have weight as a precedent for future decisions. But the court is not empowered to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it. No stipulation of parties or counsel, whether in the case before the court or in any other case, can enlarge the power, or affect the duty, of the court in this regard.

See also *Singer Mfg. Co.* v. *Wright*, 141 U. S. 696; *Codlin* v. *Kohlhausen*, 181 U. S. 151; *Heitmuller* v. *Stokes*, 256 U. S. 359; *Brownlow* v. *Schwartz*, 261 U. S. 216; and *Norwegian Co.* v. *Tariff Commission*, 274 U. S. 106.

The language used by the court, quoted above, is directly applicable to the case at bar. Here it is the duty of the court "to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which can not affect the matter in issue in the case before it." Although the entries involved in the instant case were rejected as originally tendered, they were accepted when tendered a second time, and at the time of the hearing were in the process of liquidation. Even should this court be of opinion that the collector was in error in refusing to accept the entries as originally tendered, a judgment to that effect would be of no avail, inasmuch as the entries have been filed and are in process of liquidation.

As we understand plaintiff's position it is that this court should render a judgment upon a moot question only for the beneficial effects it might have on future entries. Under the rule above set forth "the court is not empowered to decide moot questions * * * or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it."

Moreover, we find no authority in section 514, *supra*, for the instant protest, such as would have existed had plaintiff refused to file the required affidavits and filed timely protests against the collector's refusal to accept the entries as originally tendered.

For the foregoing reasons the protests are dismissed.

Judgment will be rendered accordingly.